STOULIG, Judge.
Plaintiff, Ades Gros, doing business as Ades Gros Truck Service, was awarded a $5,424.08 judgment against Charles Orlando & Sons, Inc., representing a bonus provided in a mud hauling contract.[1] On appeal, defendant contends, as it did in the trial court, that plaintiff was not paid the bonus because he did not fulfill the terms of the contract requiring him “to furnish a *531 sufficient number of trucks to haul approximately 3,500 cu. yds. of in place material per every 10 hour work day. Gros agrees to furnish more trucks if needed.” In fact, defendant reconvened for expenses it allegedly incurred due to plaintiff’s dilatory performance, but it abandoned the re-conventional demand in this court. After reviewing the testimony and documentary evidence, we reverse the judgment of the trial court because plaintiff failed to prove the bonus was earned.
The contract before us was one of the several subcontracts let in connection with the construction of an 8-mile segment of levee along Belle River in St. Martin Parish. The general contractor, Great Lakes Dredge and Dock Company, entered into a subcontract with defendant to do certain portions of the dirt work on the levee. Defendant, in turn, subcontracted with plaintiff to haul mud at 70 cents per cubic yard, total yardage to be determined by the U. S. Corps of Engineers’ measurement. Plaintiff was bound to furnish a sufficient number of trucks to haul approximately 3,500 cubic yards in place material in every 10-hour workday. Defendant refused to pay the one cent bonus on completion of the contract because plaintiff’s daily haul did not average the required 3,500 cubic yards.
Plaintiff began this job in January 1967 and concluded in February 1968. To sustain this suit, plaintiff either had to prove he did average hauling 3,500 cubic yards in place material for each workday or, if he defaulted, to establish what amount of the delay or slowdown in performance was attributable to defendant or beyond plaintiff’s control. There is testimony that defendant’s draglines broke down from time to time and delayed loading material onto plaintiff’s trucks at the borrow pit. There is also testimony of several layoffs. Although George W. Woods testified that he kept a daily record of the number of truck loads hauled by plaintiff which he turned over to Morris G. Loubat, general manager and bookkeeper for Ades Gros Truck Service, none of these records were produced at the trial. Nor could any of plaintiff’s witnesses state how many cubic yards of material in place were hauled per day. They stated that only an engineer could make this calculation, but no engineer was called to testify on behalf of the plaintiff.
Defendant, however, produced records to establish there were 231 haul days on this job and a total of 2,008 hours were worked by plaintiff’s employees. To compensate for the loss of hauling time due to inclement weather or mechanical breakdown, defendant’s bookkeeper divided the total hours by 10 and concluded the job took 200.8 full workdays to complete. Then he divided the total in place yardage of 542,408 (which no one disputes) by 200.8 and arrived at an average of 2,701 cubic yards in place per day.
We compute at the rate of 3,500 cubic yards per day the hauling of 542,408 cubic yards in place material should be completed in 155 workdays (542,408 divided by 3,500 equals 154.973). In any event the defendant supports its computations with daily reports which affirmatively show plaintiff did not meet the quota set in the contract and was not entitled to the bonus.
The trial judge rendered a judgment for the plaintiff based upon the testimony of an inspector for the Corps of Engineers that the entire levee project was completed timely and in accordance with the general contract. While this is true, it is not germane to the issue before us because we are concerned with a hauling subcontract between plaintiff and defendant. Defendant’s obligations to the general contractor are immaterial. In addition to its concern to comply with its other contract commitments timely,[2] defendant also obviously *532 must consider its cost factor. If it must furnish men and machinery to work with plaintiff in performing the hauling subcontract, obviously the longer the job takes the more money it costs defendant. But be that as it may, defendant set a quota which plaintiff failed to meet and absent a showing that it was prevented from doing so by the defendant or other causes beyond its control, plaintiff is not entitled to the bonus.
For the reasons assigned, the judgment appealed from is reversed. Plaintiff is to pay all costs of this litigation.
Reversed.

. “ * * * [I]f Gros does not faulter [sic! in his agreement in anyway, then Orlando will pay him a .01^ [sic] bonus on every pay yard Gros has hauled.”

. Vincent Orlando, executive vice president of defendant corporation, testified Ms company was awarded six of the seven bid items let in connection with the j)roject. Each of the items constituted a separate phase of construction and had to be coordinated both *532 in time sequence and cost. To this end after negotiating with plaintiff's representative and fully disclosing all of the time factors, it was determined that a minimum of 3,500 cubic yards of in place material would be necessary to complete the hauling project within the time layout of the other phases of construction, with a reasonable allowance for unfavorable weather and equipment breakdown. He further testified that due to the variance in hauling distances (between 2 and 4% miles) resulting in a corresponding adjustment of the hauling capabilities of each vehicle per day, it was impractical to specify .a given number of trucks rather than in place cubic yards.